UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAY FREES, an individual,

                Plaintiff,

v.

UA LOCAL 32 PLUMBERS AND STEAMFITTERS, a labor union, and SEATTLE AREA PLUMBING & PIPEFITTING INDUSTRY JOURNEYMAN & APPRENTICE TRAINING COMMITTEE,

                Defendants.

C07-1469Z

ORDER

THIS MATTER comes before the Court on a motion for summary judgment brought by defendant Seattle Area Plumbing and Pipefitting Industry Journeyman and Apprentice Training Committee (the "JATC"). Having reviewed all papers filed in support of and in opposition to the motion, including the supplemental briefs submitted pursuant to the Court's Minute Order dated August 22, 2008 (docket no. 52), and having considered the oral arguments of counsel, the Court now enters the following Order:

(1)    The Court DENIES the JATC's motion for summary judgment, docket no. 41;

(2)    Having provided notice by Minute Order dated October 28, 2008 (docket no. 56), of a possible sua sponte ruling, and counsel having agreed that no genuine issue of material fact exists concerning the relationship between plaintiff and the JATC, the

ORDER – 1

|   |   |   |
|---|---|---|
| 1 |    | Court GRANTS partial summary judgment in favor of plaintiff on the applicability of |
| 2 |    | the federal and state family and medical leave acts; the Court concludes as a matter of |
| 3 |    | law that the JATC was plaintiff's "employer" within the meaning of those statutes, |
| 4 |    | pursuant to the definition of a "joint employment relationship" set forth in regulations |
| 5 |    | promulgated by the United States Department of Labor; |
| 6 | (3) | Counsel are directed to file a JOINT STATUS REPORT within thirty (30) days of |
| 7 |    | this Order, indicating what issues remain for trial, when the parties can be prepared |
| 8 |    | for trial, and what adjustments, if any, should be made to the remaining deadlines; and |
| 9 | (4) | The Clerk is directed to send a copy of this Order to all counsel of record. |

**Background**

The Seattle Area Plumbing and Pipefitting Industry Journeyman and Apprentice Training Trust (the "Trust") operates apprenticeship programs in the plumbing and pipefitting trades. Holmes Decl. at ¶ 2 (docket no. 43). The Trust has delegated to the JATC responsibility for day-to-day operation of the various apprenticeship programs. *Id.* The JATC has adopted certain apprenticeship standards, which were approved by the Washington State Apprenticeship and Training Council (the "WSATC"), a state agency created by statute, which has designated as its "administration arm" the apprenticeship section of the Department of Labor and Industries ("L&I"). WAC 296-05-001(1); *see* Exh. A to Holmes Supp. Decl. (docket no. 54). The apprenticeship standards set forth the term of an apprenticeship, which is either 10,000 or 6,000 hours of "reasonably continuous employment," depending on what type of trade is involved. Exh. A at p. 8, Holmes Supp. Decl. (docket no. 54). Apprentices are also subject to a probationary period, of either 1,000 or 2,000 hours in duration, depending on the trade involved, during which their "appeal rights are impaired" and during which their apprenticeship agreement may be terminated without hearing or cause. *Id.* at 8-9. The JATC Training Coordinator has ultimate authority concerning the jobs to which an apprentice is assigned; a company may not reject

("terminate") an apprentice, and an apprentice may not leave ("quit") a job, without the approval of the Training Coordinator. Id. at 25.

In addition to the number of employment hours required for completion of an apprenticeship program, the apprenticeship standards also contain a wage progression schedule, which states the percentage of the journey-level rate an apprentice is eligible to earn, depending on the number of hours in the program the apprentice has accumulated. Id. at 11-13. For example, a housing plumber apprentice with less than 1,000 hours of employment will generally earn only 55% of the journey-level rate, but one with over 4,000 hours will ordinarily be paid 85% of the journey-level rate. Id. at 12. The JATC may accelerate via an evaluation process an apprentice's advancement on the wage progression schedule.[1] Id. at 11. In addition, the JATC must review apprentices before each advancement to the next wage progression period. Id. at 30. Although wages are paid to apprentices by their employing contractors, the associated health and other benefits are paid to the Trust, and managed by a third-party administrator. See Holmes Dep. at 16:8-14, Exh. D to Keller Decl. (docket no. 48); see also id. at 8:7-11.

To ensure that apprentices receive adequate training, the apprenticeship standards apportion the total hours of work required among various types of experiences. See Exh. A at pp. 14-21, Holmes Supp. Decl. (docket no. 54); see WAC 296-05-316(2)(e) (apprenticeship standards must include provisions to "[r]otate apprentices in the various processes of the skilled occupation to assure a well-rounded, competent worker"). For example, of the 6,000 hours a housing plumber apprentice must complete, approximately 1,800 hours must be focused on installation, maintenance, and repair of sanitary water and

---

[1] At oral argument, counsel for the JATC indicated that expedited advancement on the wage progression schedule is reserved for apprentices who have accumulated relevant hours prior to enrollment in the program. The standards, however, do not contain such limitation, and the Court has been provided no declaration or deposition testimony indicating that the JATC's authority is so restricted. Even assuming advancement on the wage progression schedule is limited to apprentices who accumulated hours prior to enrollment in the program, the Court's decision as outlined in this Order would be the same.

ORDER – 3

vent piping, 1,800 hours must be devoted to potable water piping, 800 hours must be related to plumbing fixtures, appurtenances, and appliances, 700 hours must be spent on rainwater drainage piping, 300 hours must be committed to bath and toilet room accessories, and 200 hours must be allocated to each of the following types of work: (i) natural gas piping, (ii) vacuum cleaning, pool, hot tub, and irrigation piping, and (iii) backflow prevention devices. Exh. A at p. 14, Holmes Supp. Decl. (docket no. 54).

The apprenticeship standards also outline the number of required class hours, which is either 144 or 216 hours per year, depending on the trade involved. *Id.* at 22-23. While apprentices are in class, the WSATC is considered their employer for industrial insurance purposes in the event they sustain an injury while participating in a class or class-related activity done at the direction of the instructor. *Id.* at 22. Continued wage advancement is conditioned on class attendance. *Id.* at 24. For every three hours of class missed, the next wage advancement is delayed by one month. *Id.* Absence for more than nine hours of class in one year is grounds for disciplinary action. *Id.* Up to two unexcused absences per year may be made up. *Id.* The standards do not indicate whether excused absences must be or can be made up. The standards also do not define an excused or unexcused absence.

Plaintiff Jay Frees was an apprentice in the commercial plumber program, which requires 10,000 hours of "reasonably continuous employment" and 216 hours of "related/supplemental instruction." *See id.* at 20-21, 23. He began the program in June 2003, was expelled in May 2006, and had logged over 4,000 hours before his termination. Frees Decl. at ¶¶ 3 & 6, Exh. B to Keller Decl. (docket no. 48). During the course of his apprenticeship, plaintiff was placed with five different plumbing contractors. Holmes Decl. at ¶ 5 (docket no. 43). At oral argument, plaintiff's counsel indicated that plaintiff spent as little as two months and as much as ten months with any one company, and that the JATC did not permit an apprentice to remain with a particular contractor for more than one year. *See also* Holmes Dep. at 31:15-17, Exh. D to Keller Decl. (docket no. 48).

ORDER – 4

Although counsel for the JATC disputed the assertion that the JATC generally rotates apprentices on an annual or quicker basis, she did acknowledge that the timing of such reassignments would impair an apprentice's ability to qualify, as an employee of the plumbing contractor, for benefits under the federal and state family and medical leave acts.

In March 2006, just prior to his discharge from the apprenticeship program, plaintiff was working at American Mechanical Company ("AMC"), where he had been assigned by the JATC. *See* Frees Supp. Decl. at ¶ 2 (docket no. 47). On March 15, 2006, while attending a class, plaintiff received a call from his wife's physician indicating that his wife immediately needed certain medical tests to assess whether she had multiple sclerosis. Frees Decl. at ¶ 4, Exh. A to Keller Decl. (docket no. 48). Plaintiff informed the instructor of the situation, left a note for JATC Training Coordinator Grant ("Ed") Holmes, and went home to attend to his wife. *Id.* While assisting his wife with her medical issues, plaintiff missed a total of three days of work and one-half day of class. *Id.*

In May 2006, the JATC dismissed plaintiff from the apprenticeship program, citing poor attendance as the sole reason. Holmes Decl. at ¶ 6 (docket no. 43); Holmes Dep. at 35:13-19, Exh. D to Keller Decl. (docket no. 48) (although the JATC considered other issues, it did not indicate in the termination letter to plaintiff any other basis for discharge). The JATC has provided no evidence concerning absences other than the few days plaintiff missed in connection with diagnosis of his wife's multiple sclerosis. In August 2007, plaintiff filed suit in state court against United Association Local 32 ("UA Local 32"), alleging violation of the federal and state family and medical leave acts, 29 U.S.C. §§ 2601-2654 and RCW Chapter 49.78, as well as wrongful termination in violation of public policy. *See* Complaint (docket no. 2). UA Local 32 timely removed the case to this Court, *see* Notice of Removal (docket no. 1), and plaintiff was subsequently granted leave to amend his complaint to add the JATC as a defendant, *see* Minute Order (docket no. 12); *see also* Amended Complaint (docket no. 13).

ORDER – 5

In April 2008, the Court granted UA Local 32's motion for summary judgment. *See* Order (docket no. 32). The JATC has now moved for summary judgment on the ground that apprentices are not employees and that it is not an "employer" within the meaning of the federal and state family and medical leave acts or under common law. Plaintiff did not move for judgment in his favor concerning the applicability of the statutes at issue, but prior to oral argument on the subject, the Court provided written notice to the parties that it intended to rule on the question of liability without regard to whether a party has filed a motion. *See* Minute Order (docket no. 56); *see also* <u>Buckingham v. United States</u>, 998 F.2d 735, 742 (9th Cir. 1993) (a court may sua sponte grant summary judgment if the standards of Fed. R. Civ. P. 56 are met and the litigants are given reasonable notice). At oral argument, counsel agreed that no genuine issue of material fact exists concerning the relationship between plaintiff and the JATC, and thus, whether plaintiff is covered by the statutes in question constitutes a matter of law now ripe for the Court's consideration.

**Discussion**

**A.    Standard for Summary Judgment**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. <u>Anderson</u>, 477 U.S. at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See* <u>Miller v. Glenn Miller Prod., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006).

## B. "Employer" Under Family and Medical Leave Act

The Family and Medical Leave Act of 1993 ("FMLA") guarantees to certain employees up to twelve weeks of unpaid leave in a twelve-month period for specified reasons, including to care for a spouse who has a serious health condition.[2] 29 U.S.C. § 2612(a)(1). Washington has a similar statute, which also provides that any leave taken under state law must be taken concurrently with any leave under the FMLA. RCW 49.78.390. For purposes of the FMLA, an employer is defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."[3] 29 U.S.C. § 2611(4)(A). Washington's statute has a similar definition. *See* RCW 49.78.020(5)(a) (an employer is "[a]ny person . . . which engages in any business, industry, profession, or activity in this state . . . , which employs fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year").

The United States Department of Labor ("DOL"), as the agency with delegated authority to carry out the purposes of the FMLA, has promulgated regulations further clarifying the definition of employer. *See* 29 U.S.C. § 2654; *see also Moldenhauer v. Tazewell-Pekin Consol. Commc'n. Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008) ("Congress has instructed the U.S. DOL to 'prescribe such regulations as are necessary to carry out' the purpose of the FMLA"). Under the DOL regulations, two or more separate corporations or entities may be treated as a single employer for purposes of counting employees if they have

---

[2] The parties do not appear to dispute that plaintiff's wife has a serious health condition, which means "an illness . . . that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *compare* RCW 49.78.020(16).

[3] As of June 2008, the JATC had 477 apprentices, of which 198 were in the plumbing apprenticeship program; at the time plaintiff was in the program, the JATC had a total of about 240 apprentices, of which 120 to 125 were in plumbing. Holmes Dep. at 5:21-6:3, 6:15-7:2, Exh. D to Keller Decl. (docket no. 48). Thus, if apprentices are counted as employees, the JATC had a sufficient number for a sufficient period to qualify as an "employer" under the FMLA.

ORDER – 7

a joint-employment relationship.  *See* 29 C.F.R. § 825.104(c)(1) & 825.106(d) ("Employees jointly employed by two employers must be counted by both employers . . . in determining employer coverage and employee eligibility.  For example, an employer who jointly employs 15 workers from a leasing or temporary help agency and 40 permanent workers is covered by FMLA.").  A joint-employment relationship might exist when "two or more businesses exercise some control over the work or working conditions of the employee."  29 C.F.R. § 825.106(a).

The DOL regulations describe three arrangements generally considered to be a joint-employment relationship, including when "one employer acts directly or indirectly in the interest of the other employer in relation to the employee."  29 C.F.R. § 825.106(a)(2).  An example of this type of joint-employment relationship is when "a temporary or leasing agency supplies employees to a second employer."  *See* 29 C.F.R. § 825.106(b).  In such circumstances, the placement agency is commonly understood to be the "primary employer," with responsibility for job restoration following FMLA leave.  *See* 29 C.F.R. §§ 825.106(c) & (e).  Indicia of status as the "primary" employer include (i) authority to hire and fire, (ii) ability to assign or place the employee, (iii) payment of wages, and (iv) provision of employment benefits.  29 C.F.R. § 825.106(c).

This case presents an issue of first impression.  The Ninth Circuit has addressed joint employment, but not in the apprentice or on-the-job training context.  *See* *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2004).  In *Moreau*, the Ninth Circuit observed that the FMLA does not specifically discuss the joint employment concept, and it looked to the DOL regulations for guidance.  *Id.* at 946.  Although the *Moreau* Court considered the DOL's four indicia of a "primary" employer, which are substantially the same factors articulated by the Ninth Circuit in a Fair Labor Standards Act ("FLSA") case,[4] the *Moreau* Court did not

---

[4] *See* *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983).  In *Bonnette*, the Ninth Circuit approved the district court's focus on the following four factors:  (i) the power to hire and fire; (ii) supervision and control of work schedules and conditions of employment; (iii) determination of the rate and

ORDER – 8

explicitly adopt the test, concluding that it was "a bit narrow in the circumstances" of the case. *Id.* at 950, 953. Instead, the *Moreau* Court applied the "totality" of the circumstances standard also set forth in the DOL regulations, ultimately determining that the plaintiff's employer, Air France, did not have joint-employment relationships with three other companies contracted to provide certain services, including ground handling, catering, and cargo handling. *Id.* at 950-53; *see also* 29 C.F.R. § 825.106(b). The plaintiff in *Moreau* sought to count the contractors' workers as Air France employees for purposes of meeting the numerical threshold of the FMLA, but she did not herself have any relationship with the contractors, and the *Moreau* case is, for that and other reasons, distinguishable from the case now before the Court. Nevertheless, the *Moreau* decision provides a framework from which the Court must begin its analysis.

The Sixth and Seventh Circuits have likewise examined whether two entities had a joint-employment relationship, but neither case involved an apprenticeship or training program. *Grace v. USCAR*, 521 F.3d 655 (6th Cir. 2008); *Moldenhauer v. Tazewell-Pekin Consol. Commc'n Ctr.*, 536 F.3d 640 (7th Cir. 2008). In *Grace*, the Sixth Circuit concluded that a contract employer and a placement agency were joint employers for purposes of the FMLA, and that the placement agency was the plaintiff's primary employer. 521 F.3d at 659, 665-69. The plaintiff in *Grace* was a contract employee who held various information technology positions for USCAR, a partnership between American automobile manufacturers; her payroll and benefits were managed by Bartech Technical Services, LLC ("Bartech"), a staffing agency. *Id.* at 659-60, 667. The Sixth Circuit concluded that both USCAR and Bartech exercised some control over the plaintiff and were therefore joint

---

method of payment; and (iv) maintenance of employment records. *Id.* at 1470. The Ninth Circuit observed that such factors had been considered in varying combinations by other courts in FLSA cases, and it concluded that the factors were relevant to the particular situation in *Bonnette*. *Id.* The Ninth Circuit, however, cautioned that the four factors "provide a useful framework for analysis in this case, but they are not etched in stone and will not be blindly applied. The ultimate determination must be based 'upon the circumstances of the whole activity.'" *Id.*

ORDER – 9

employers, and that Bartech was the primary employer because, in addition to handling payroll and benefits, it had ultimate authority to hire or fire the plaintiff and sole ability to assign her to a particular company. Id. at 667-69.

In contrast, in *Moldenhauer*, the Seventh Circuit found that a joint-employer relationship did not exist. The plaintiff in *Moldenhauer* worked for the Tazewell-Pekin Consolidated Communications Center ("Tazcom"), a non-profit entity providing emergency 911 dispatch services. 536 F.3d at 641. Tazcom is an independent entity that charges its clients, which include the City of Pekin and Tazewell County, for 911 communications. Id. at 642. The bulk of Tazcom's budget is derived from expenses paid by the City of Pekin and Tazewell County, which are the largest users of Tazcom's services. Id. Tazcom rents office space from the City of Pekin, and pays the City of Pekin for payroll services. Id. For technological reasons, Tazcom employees are identified as City of Pekin employees in connection with payroll matters, such as direct depositing and income tax withholding. Id.

In concluding that the City of Pekin and Tazewell County did not have a joint-employer relationship with Tazcom, the Seventh Circuit stressed that the plaintiff "cannot point to one instance of either Pekin or Tazewell hiring a Tazcom employee, determining the working conditions of the dispatchers . . ., or deciding the compensation for a Tazcom dispatcher." Id. at 645. The fact that the City of Pekin managed Tazcom's payroll did not affect the analysis because Tazcom paid the City of Pekin to provide such services. Id. In addition, the Seventh Circuit observed that Tazcom, with only 23 employees offering 911 dispatch services 24 hours per day, seven days a week, was "exactly the type of business that is unable to absorb an employee's twelve-week absence for FMLA leave," and the plaintiff proffered no evidence that the City of Pekin or Tazewell County could supply an employee to Tazcom to cover an FMLA absence. Id. In reaching its decision, the Seventh Circuit specifically declined to adopt a list of factors, similar to those identified in *Moreau*, concluding that "[a]lthough these factors are certainly relevant in deciding whether an

employer-employee relationship exists, it would be foolhardy to suggest that these are the *only* relevant factors, or even the most important." Id. at 644 (emphasis in original).

In this case, the JATC contends that the joint-employer doctrine does not apply, and that the DOL regulation, as well as the Sixth and Seventh Circuit opinions, are not relevant, because the JATC is an educational or academic institution. The JATC posits that the FMLA is not targeted at students, but rather at those in the "workplace," see 29 U.S.C. § 2601(b)(1) (a purpose of the FMLA is "to balance the demands of the workplace with the needs of families"), and it implores the Court to distinguish between a student acting as a student and a student acting as an employee. See Suppl. Brief at 3-6 (docket no. 53). The JATC argues that the FMLA should not be interpreted in a manner that might impede an educational institution's ability to discipline a student for failing to attend classes, complete assignments, or take tests due to family or medical needs.[5] Likewise, the JATC asserts that the FMLA should not be construed to prevent an academic facility from expelling a student because of the impact it will have on any work-study job or paid internship.

The Court is not persuaded by the JATC's arguments. In *Moreau*, the Ninth Circuit, relying on the DOL's regulations concerning joint employment, indicated that, in these types of circumstances, "the entire relationship" must be "viewed in its totality." See 356 F.3d at 952-53; see also 29 C.F.R. § 825.106(b). In light of this "totality of the circumstances" standard, the Court declines to adopt the dichotomy proposed by the JATC, under which academic institutions would be, by virtue solely of their status, shielded from the dictates of, or liability under, the FMLA. Indeed, the record in this very case evidences the wisdom of

---

[5] The JATC does not identify any hardship to the apprenticeship program or its associated contractors that would accrue from allowing an apprentice to take an extended leave. Unlike the small employer in *Moldenhauer*, which could not absorb twelve weeks of running one dispatcher down during one shift of each 24-hour day, the JATC has a substantial number of apprentices, any one of whom could presumably be reassigned if necessary to cover the duties of a person on leave. In addition, the JATC already offers makeup classes for even unexcused absences, and it has provided no reason why it could not simply require an apprentice who misses a significant amount of class to retake the course in the next year or cycle, which is how educational institutions generally handle such matters.

ORDER – 11

viewing the relationship at issue in its totality. Here, although the JATC labels itself as solely an educational program, an examination of the apprenticeship standards leads to a different conclusion. A commercial plumbing apprentice must average 38.5 hours of work per week to reach the requisite 10,000 hours within the five years of the program. By comparison, an apprentice must attend only 216 hours of class per year, which represents only 4.2 hours per week. Although a traditional academic program might contain a compensated work component, the ratio is generally not so weighted toward work, which here represents 90% of the apprenticeship time.

Moreover, even when apprentices are in class, the apprenticeship standards contemplate that they are considered employees, albeit of the WSATC, for purposes of industrial insurance coverage. This fact distinguishes the apprenticeship program from traditional educational institutions, the students of which would not usually be eligible for L&I benefits if injured during class or class-related activities. Finally, unlike an academic facility, which generally disciplines students via grade reductions, suspensions, or expulsions, the JATC disciplines apprentices via delays in wage advancement, thereby inextricably linking the work and class components of the program. In sum, although the joint-employer doctrine might not be applicable to some or even most relationships between educational institutions and their students, the JATC has not established that it is the type of academic program that should be excluded from FMLA coverage.[6]

Turning to the question whether the JATC has a joint-employer relationship with AMC, the JATC argues that plaintiff's work was not for the benefit of the JATC and that the JATC did not exercise any of the indicia of control over plaintiff necessary to deem it an

---

[6] In addition, the JATC has not addressed how it differs from an employer's in-house apprenticeship program, which might contain a classroom component, but would not on that basis be exempt from the FMLA. Compare Dillbeck v. Whirlpool Corp., 2008 WL 3819824 (S.D. Ind.) (denying the employer's motion for summary judgment because genuine issues of material fact existed concerning whether plaintiff, who was in an in-house apprenticeship program requiring 8,000 hours of on-the-job training and 576 hours of instruction, was removed because of or in retaliation for her exercise of FMLA rights).

ORDER – 12

employer. The JATC's contentions lack merit. As an initial matter, the Court notes the parties do not dispute that AMC and plaintiff had an employment relationship. Thus, the question here is whether the JATC also had an employment relationship with plaintiff. The JATC has cited no authority for the proposition that plaintiff's work must have been for the benefit of the JATC. The DOL regulations require only that one employer act directly or indirectly in the interest of the other employer for both to be considered in a joint-employment relationship. 29 C.F.R. § 825.106(a)(2). Moreover, the DOL regulations recognize that the FMLA definition of employ, meaning "to suffer or permit to work," is based on the language of the FLSA, which is interpreted to require much less positive action than under the common law. <u>See</u> 29 C.F.R. § 825.105(a). "Mere knowledge by an employer of work done for the employer by another is sufficient to create the employment relationship under the Act." <u>Id.</u> Finally, even if a benefit to the JATC constitutes an element of proof, such hurdle is met because, but for the work that the apprentices perform, and the associated need to administer the apprenticeship program, the JATC would not exist.

In separately contending that it does not have sufficient control over an apprentice's work to be considered an employer, the JATC ignores its own apprenticeship standards. The apprenticeship standards provide sole authority to the JATC Training Coordinator to make assignments, explicitly prohibiting a contractor from terminating an apprentice and an apprentice from quitting a job.[7] The standards set forth with precision the types and quantities of assignments apprentices must receive during their tenure. They outline the wages apprentices must be paid and permit the JATC to adjust the wages according to an apprentice's level of mastery or for disciplinary reasons. Moreover, the Trust and/or the JATC, not the individual contractors, manage the employment benefits. Finally, and most

---

[7] The JATC's argument that it had the ability to remove plaintiff from the apprenticeship program but not to "hire or fire" him or discharge him from AMC's employment states a distinction without a difference. By expelling plaintiff from the apprenticeship program, and ending plaintiff's chances of becoming a journey-level plumber, the JATC precluded plaintiff from working as a plumber for AMC or any similar plumbing contractor.

importantly, the JATC has absolute control concerning the length of time an apprentice remains in a particular rotation, which is typically less than the twelve months required by the FMLA,[8] thereby wielding complete power to render apprentices ineligible for FMLA coverage via their respective employing contractors.

The facts of this case are more analogous to *Grace*, in which the Sixth Circuit found a joint-employment relationship, than to *Moldenhauer*, in which such relationship did not exist. Like the staffing agency in *Grace*, the JATC places apprentices with certain contractors and exercises some control over their work and their wages. As in *Grace*, here, a contractor might eliminate the position an apprentice fills, but the contractor cannot terminate the apprentice from the program; only the JATC can expel an apprentice and thereby inhibit his or her ability to work toward journey-level status. Moreover, unlike in *Moldenhauer*, the JATC and/or the Trust, through a third-party administrator, oversees employment benefits for apprentices, absent any apparent compensation for doing so from the various contractors for whom the apprentices work. Because the JATC has a relationship with its apprentices similar to that of a staffing or placement agency, and it therefore had, during the period in question, more than the requisite number of employees for the necessary length of time, the Court holds as a matter of law that the JATC was an "employer" for purposes of both the FMLA and Washington's analogous statute.[9] Thus, the JATC's motion

---

[8] To be eligible for leave under the FMLA or the state equivalent, an employee must have worked for at least twelve months, and at least 1,250 hours during the previous year, for the employer from which such leave is requested. 29 U.S.C. § 2611(2)(A); RCW 49.78.020(4)(a).

[9] The DOL regulations envision that one of two or more joint employers must be designated the "primary" employer with responsibility for absorbing an FMLA leave. *See* 29 C.F.R. § 825.106(c). For purposes of assessing the applicability of the FMLA in this case, however, whether the JATC was plaintiff's "primary" employer is not relevant. Even if the JATC was not plaintiff's "primary" employer, it bore an obligation as a joint employer not to interfere with plaintiff's rights under the FMLA. *See* 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(b) (interference includes manipulation by an employer to avoid responsibilities under the FMLA by, for example, reducing hours or employees at a work site below the statutory threshold); *see also* *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1218, 1219 (S.D. Cal. 1998) ("claims of interference are governed by a strict liability standard" and a plaintiff need not prove the "employer's subjective intent" to violate the statute to recover for interference with FMLA rights).

ORDER – 14

for summary judgment is DENIED, and plaintiff is GRANTED partial summary judgment concerning the applicability of the FMLA and its state counterpart.[10] The parties shall file a Joint Status Report within thirty (30) days of this Order, indicating what issues remain for trial, when the parties can be prepared for trial, and what adjustments, if any, should be made to the remaining deadlines.

  IT IS SO ORDERED.

  DATED this 21st day of November, 2008.

                /s/ Thomas S. Zilly
                Thomas S. Zilly
                United States District Judge

---

[10] In light of its ruling regarding the JATC's status as an "employer," the Court DENIES the JATC's motion for summary judgment as to plaintiff's common law claim for wrongful discharge in violation of public policy. The Court, however, makes no decision concerning the viability of plaintiff's common law claim.

ORDER – 15